**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COMMERCE AND INDUSTRY INSURANCE
COMPANY,
<u>Plaintiff-Appellee,</u>

v.

VALERO TERRESTRIAL CORPORATION,
d/b/a Brooke County Sanitary
Landfill; SOLID WASTE SERVICES OF
WEST VIRGINIA, INCORPORATED; SOLID

WASTE SERVICES, INCORPORATED;
DOMINICK TANTALO,
<u>Defendants-Appellants,</u>

and

RICHARD SIX; DONNA SIX, his wife;
RICHARD GILBERT SIX; JAMIE LEE
KOONS, their children,
<u>Defendants.</u>

No. 95-1874

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-93-103-5)

Argued: December 4, 1995

Decided: May 6, 1996

Before WILKINSON, Chief Judge, RUSSELL, Circuit Judge, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Albert Anthony DeGennaro, Harleysville, Pennsylvania, for Appellants. John Wilbur Alderman, III, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellee. **ON BRIEF:** William F. Fox, Jr., Harleysville, Pennsylvania, for Appellants. Martin R. Smith, Jr., STEPTOE & JOHNSON, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this insurance dispute, we must determine the liability of Commerce and Industry Insurance Co. ("Commerce") under a commercial general liability policy issued to Valero Terrestrial Corporation d/b/a Brooke County Sanitary Landfill ("Valero"). One of Valero's employees who was injured in a work-related accident sued Valero and one of its supervisors, alleging that the accident was caused by the intentional conduct of Valero and the supervisor. Valero filed a claim with Commerce under its commercial general liability insurance policy to pay for the costs of defense. Commerce denied coverage but undertook the defense with a reservation of rights. Commerce brought this action, seeking a declaratory judgment that Commerce had no obligation under the insurance policy to provide a defense for an action alleging intentional conduct. The district court granted summary judgment in Commerce's favor. We affirm.

I.

Commerce issued to Valero a policy of commercial general liability insurance, Policy No. GLCM 340-43-30 RA (the"policy")[1] The period of the policy was from December 1, 1992, to December 1, 1993.

On October 5, 1991, Richard Six, an employee of Valero, was operating a dump truck in the course of his employment. As Six was carrying a load of dirt up a steep hill, the vehicle lost its acceleration. Six attempted to use the brakes, but the vehicle drifted down the hill and rolled backward over a six-foot embankment. Because of the accident, Six incurred back injuries.

Six applied for and received workers' compensation benefits. On March 12, 1993, Six filed an action in West Virginia state court alleging that the intentional conduct of Valero (his employer) and Dominick Tantalo (his supervisor) caused his injuries. Six named both Valero and Tantalo as defendants. In West Virginia, a personal injury action relating to an employer's intentional infliction of injuries upon an employee is commonly referred to as a "Mandolidis action," named after the West Virginia Supreme Court's decision in Mandolidis v. Elkins Industries, Inc., 246 S.E.2d 907 (W. Va. 1978).

Valero filed a claim with Commerce under the policy for coverage of its defense costs in Six's Mandolidis action. Commerce agreed to assume Valero's defense while reserving its right to contest its obligation to cover Valero's claim. Commerce subsequently filed this declaratory judgment action in United States District Court for the Northern District of West Virginia,[2] claiming that the policy did not cover Valero for the defense of a Mandolidis action.

_____

[1] Valero was one of several named insureds on the policy.

[2] Commerce named Valero and Tantalo as defendants. It also named Solid Waste Services, Inc. and Solid Waste Services of West Virginia, Inc. as defendants. These two corporations were also named insureds on the insurance policy with Commerce, but they had no involvement in the accident.

After discovery, on June 23, 1994, Commerce filed a motion for summary judgment. On August 8, Valero and Tantalo filed a memorandum in opposition to Commerce's motion for summary judgment. The defendants also filed a cross-motion for summary judgment in its favor. The defendants did not file a memorandum in support of its cross-motion, but instead incorporated by reference its memorandum in opposition to Commerce's motion. On September 1, Commerce filed its reply memorandum in support of its motion for summary judgment.

The district court granted Commerce's motion for summary judgment on March 22, 1995. The district court did not rule on the defendants' cross-motion for summary judgment, which the district court deemed withdrawn for failure to file a supporting memorandum under Local Rule 2.07(e) of the United States District Court for the Northern District of West Virginia. The defendants appeal.

II.

This court reviews de novo the district court's granting or denying of summary judgment. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 928 (4th Cir. 1995). Summary judgment is appropriate where the record shows that"there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

The policy covered Valero for any damages and defense costs resulting from "bodily injury" or "property damage," as defined in the policy. Section I.A.2.e(1) of the policy specifically excludes coverage of "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured . . . ."[3] Valero, however, paid an additional premium for a stop-gap endorsement, which provided that:

_____

[3] Endorsement 13 amended § I.A.2.e of the Policy, but the quoted portion was not changed.

4

> In consideration of the premium herein provided, it is agreed that if, under any circumstances, it is determined that any employee of the insured, who is reported and declared under the workers' compensation law or laws of the State(s) of . . . West Virginia . . . is injured in the course of his employment but is not entitled to receive (or elects not to accept) the benefits provided by the aforementioned law, then this policy shall cover the legal liability of the insured for such bodily injury, disease or death.

The stop-gap endorsement extends coverage of the policy to damages resulting from "bodily injury" to employees acting in the course of their employment. Thus, while the policy expressly excludes coverage of damages resulting from an injury to an employee, the endorsement removes this barrier to Valero's claim.

Both the policy and the endorsement, however, exclude coverage of damages arising from the insured's intentional conduct. Section I.A.2.a of the policy provides that the insurance does not apply to "`[b]odily injury' or `property damage' expected or intended from the standpoint of the insured." The policy also implicitly excludes coverage of intentional conduct. Section I.A.1.b(1) of the policy provides that "[t]his insurance applies to `bodily injury' and `property damage' only if . . . [t]he `bodily injury' or`property damage' is caused by an `occurrence' that takes place in the `coverage territory.'" Section VI.9 of the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful offenses." Although the policy does not define"accident," we generally understand the term to refer to unintentional conduct. See The American Heritage Dictionary 71 (2d college ed.) (1982) (defining "accident" as "[s]omething that occurs unexpectedly or unintentionally"). Because the policy covers damages resulting from occurrences, which by definition do not include intentional acts, the policy does not cover damages resulting from the insured's intentional conduct.

The stop-gap endorsement, similarly, is limited to occurrences. The endorsement provides (emphasis added):

> The [insurer's] liability under this endorsement on account of bodily injury, disease, or death of one person, including

5

> damages for care and loss, as the result of one <u>occurrence</u>, is limited to the sum of $1,000,000 and subject to the same limit for each person, the [insurer's] total limit of liability for bodily injury, disease, or death as result of one <u>occurrence</u> is limited to the sum of $1,000,000.

Thus, the endorsement, like the policy, does not extend coverage to damages resulting from Valero's intentional conduct.

The endorsement does not provide coverage of Valero's claim for a second reason. The endorsement provides coverage only where the injured employee is not entitled to receive workers' compensation insurance or elects not to accept those benefits. It expressly excludes coverage where the injured employee accepts workers' compensation benefits.

Before bringing his <u>Mandolidis</u> action against Valero, Six applied for and received workers' compensation benefits. Because Six has sued Valero for its intentional conduct and because Six has already received workers' compensation benefits for his injuries, neither the policy nor the stop-gap endorsement cover Valero's defense costs in Six's action.

B.

Valero contends that it had a reasonable expectation when it purchased the stop-gap endorsement that it would receive coverage of damages and defense costs resulting from its own intentional conduct. Valero urges this court to consider its reasonable expectation in purchasing the endorsement.

Under the doctrine of reasonable expectations, #7F 79AD#a]n insurance contract should be given a construction which a reasonable person standing in the shoes of the insured would expect the language to mean.'" <u>National Mutual Ins. Co. v. McMahon & Sons, Inc.</u>, 356 S.E.2d 488, 495 (W. Va. 1987) (quoting <u>Soliva v. Shand, Morahan & Co.</u>, 345 S.E.2d 33, 35-36 (W. Va. 1986)). With respect to insurance contracts, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will

6

be honored even though painstaking study of the policy provisions would have negated those expectations." Id . (citation omitted). Under West Virginia law, however, the doctrine of reasonable expectations applies only where the policy terms are ambiguous. Id. at 496 (citing Soliva, 345 S.E.2d at 36).

Although Valero concedes that the language of the stop-gap endorsement is unambiguous, see Appellant's Brief 12 (stating "while the lower court may not have been totally without basis in concluding that the language did not appear to be ambiguous . .."), Valero argues that we have interpreted the endorsement in a way that creates an absurd result. Valero contends that the stop-gap endorsement, as we have interpreted it, does not provide Valero with any coverage not already included in the policy. According to Valero, the endorsement does not protect Valero against damages arising from an employee's accidental injuries because the employee can always seek workers' compensation benefits and, as we have interpreted it, the endorsement excludes coverage of Valero's intentional conduct. Because it is absurd to think that Valero would pay a premium for an endorsement that never provides coverage, Valero argues that we must interpret the endorsement in light of Valero's reasonable expectations. Valero insists that it expected the endorsement to provide coverage of employee's injuries resulting from its own intentional conduct.

We find no merit in Valero's argument. The endorsement does cover something: it protects Valero against damages arising from the accidental injuries to employees who choose not to seek workers' compensation benefits. Although injured employees have the option to seek workers' compensation benefits, some may elect not to take those benefits and to sue his employer directly for his injuries. The stop-gap endorsement protects Valero against this event. Presumably, the price of the premium reflects the fact that many employees, when injured, will settle for workers' compensation benefits.

We have our doubts that Valero, when purchasing the stop-gap endorsement, believed it was purchasing coverage of bodily injury to its employees caused by its own intentional conduct. We also doubt that such an expectation would have been reasonable in light of the premium that Valero paid for the endorsement. Nonetheless, we need not consider these factual issues. Because the language of the stop-

7

gap endorsement is unambiguous and does not lead to an absurd result, we enforce its terms without considering the purported expectations of the insured when it purchased the endorsement.

III.

Having concluded that the policy and endorsement do not cover damages and defense costs resulting from Valero's intentional conduct, we need not address the defendants' other substantive arguments. These arguments, even if valid, would not alter the fact that the policy and endorsement exclude damages and defense costs resulting from the insured's intentional conduct.

Furthermore, we need not address the defendants' argument that the district court erred in treating their motion for summary judgment as withdrawn. Because we affirm the district court's granting of summary judgment in favor of Commerce, the defendants' motion for summary judgment is moot.

IV.

For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of Commerce.

<u>AFFIRMED</u>